IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | No. CR-06-54-C |
| | ) | |
| RONALD VANHOOK and DONALD | ) | |
| RAY VANHOOK, | ) | |
| | ) | |
| Defendants | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Motions to Suppress filed by each Defendant.  Plaintiff filed a

combined response and Defendant Ronald Vanhook filed a reply.  An evidentiary hearing

was held on May 17, 2006.  This matter is now at issue.

Mr. Ronald Vanhook was stopped by Trooper Vowell for speeding.  At the hearing

Trooper Vowell testified that he clocked Ronald Vanhook traveling driving 75 m.p.h. and

74 m.p.h. in a 70 m.p.h. zone.[1]  Trooper Vowell then initiated a stop of the vehicle Ronald

was driving.  Once stopped, Ronald exited his vehicle and had a discussion with the trooper

while standing between the two vehicles.  Trooper Vowell asked Ronald to have a seat in the

patrol car.  Donald Vanhook remained in the passenger seat of Ronald's car.  Trooper Vowell

---

[1]  Trooper Vowell also asserted a tag violation because of a plastic frame surrounding the
license plate on the car.  However, because that issue did not provide a basis for the stop, it need not
be further addressed.

informed Ronald that he was stopped for speeding.  Ronald denied that he was speeding and

testified at the hearing that he could not have been speeding because he had set the car's

cruise control.  At the hearing, Ronald testified that he was careful of his speed because of

the contraband he was transporting.[2]

  While writing the warning Trooper Vowell engaged Ronald Vanhook in conversation

about his travel plans, where he worked, the identity of the passenger (Donald), and

ownership of the car.  According to Trooper Vowell, Ronald exhibited signs of nervousness

during this questioning.   Trooper Vowell also noted it was peculiar that Ronald's

nervousness did not decrease during the stop, even after being informed he would only

receive a warning.  Trooper Vowell testified that once he and Ronald were seated in the

patrol car, he noticed a faint odor of burnt marijuana.  When asked about the signs of

nervousness exhibited by Ronald, Trooper Vowell testified that he would not make eye

contact; his voice "cracked;" his end destination changed from Alabama to Arkansas and

back to Alabama; and that the purpose of the visit was to visit a cousin's nephew who had

just had a new baby.  When asked about the ownership of the car, Ronald informed Trooper

Vowell the car was a rental and the paperwork was above the visor.  Trooper Vowell then

stated he was going to go get it, whereupon he got out of his patrol car and went to Ronald's

car and opened the driver's side door.  While at the car, Trooper Vowell engaged Donald in

a brief conversation similar to the one with Ronald.  Trooper Vowell testified that Donald

---

[2] Ronald is not at all credible on this issue, given the fact he had received a speeding ticket earlier the same day.

at first feigned being asleep but then responded alertly.  According to Trooper Vowell,

Donald relayed they were traveling to Baltimore because an uncle had died.  Trooper Vowell

testified that Donald also appeared more nervous than would be expected during a traffic

stop.  Trooper Vowell testified that while visiting with Donald, he detected the odor of burnt

marijuana and a strong chemical odor Trooper Vowell identified as PCP.  After visiting with

Donald and retrieving paperwork, Trooper Vowell returned to the patrol car and continued

writing the warning.  While waiting for checks to come back from dispatch, Trooper Howell

elected to run his canine, Hilto, around Ronald's car.  Hilto hit on the car indicating that

controlled substances were present inside.  Following a search of Ronald's car, PCP was

located in the trunk.  Ronald and Donald were arrested and each was charged with conspiracy

to possess with intent to distribute PCP and possession with intent to distribute PCP.

Defendants filed their motions seeking suppression of the evidence found during the

search of their car.[3]  According to Defendants, when Trooper Vowell opened the car door,

he conducted a search and anything learned after that point in time is tainted by the illegal

nature of the search and must be suppressed.  Plaintiff asserts that Trooper Vowell had a

sufficient basis to conduct the search based on the nervousness of Ronald and the odor of

marijuana.  At the hearing, Ronald attempted to undermine Trooper Vowell's asserted basis

for the search by arguing that he did not exhibit signs of nervousness, that his and Donald's

---

[3] Plaintiff challenges Donald's standing to contest the search of the vehicle as he was merely a passenger.  Donald argues that because it was to be a long trip and he had a bag with clothing in the trunk, he had an expectation of privacy sufficient to give him standing.  Because the motion will be denied, it is unnecessary to resolve the dispute.

stories were not inconsistent until Trooper Vowell committed the illegal search of opening the car door and that due to the overwhelming odor of PCP surrounding Ronald, Trooper Vowell could not have smelled a faint odor of marijuana.

Routine traffic stops are analyzed under the two-part test announced by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 19-20 (1968). United States v. Williams, 403 F.3d 1203, 1206 (10th Cir. 2005). First, the Court must determine whether the stop was "justified at its inception." Id. Second, the Court must determine whether the trooper's conduct during the traffic stop was reasonably related in scope and duration to the circumstances giving rise to the initial traffic stop. Id. Here, the Court finds the stop was justified at its inception. Trooper Vowell offered credible testimony that Ronald was exceeding the speed limit. Thus, Trooper Vowell was justified in stopping the vehicle and the first prong is satisfied.

As for the relationship between Trooper Vowell's conduct and the circumstances of the stop, the Court finds Trooper Vowell's conduct was reasonable in scope and duration. As part of a routine traffic stop, a law enforcement officer may, without unlawfully expanding the traffic stop's duration, request the driver's license, vehicle insurance and registration; inquire about the driver's authority to operate the vehicle; inquire about the travel history and travel plans of the persons detained; ask about the presence of loaded firearms in the vehicle; examine any documents produced; run a computer check on the vehicle's registration; run a computer check on persons detained for any criminal history; and issue a citation or warning. United States v. Holt, 264 F.3d 1215, 1220-26 (10th Cir. 2001);

4

United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997); United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996).   Thus, Trooper Vowell's questioning of Ronald was permissible.  Further, the Court finds that Trooper Vowell did not unduly extend the duration of the stop by the questioning.  Rather, the questioning involved information necessary to properly complete the warning form and to provide the information necessary for dispatch to perform routine computer checks on Ronald and the car he was driving.  It is also clear that Trooper Vowell using his canine, Hilto, to scan Ronald's car did not delay the stop. Trooper Vowell's testimony that he performed the scan while waiting on a report from dispatch was undisputed and corroborated by the videotape of the stop.  Thus, Trooper Vowell's conduct as it relates to his questioning of Ronald was constitutionally proper.

Defendants argue that even if the stop and questioning were proper, there was no constitutionally sufficient basis for the search.  According to Defendants, because the warrantless search of the vehicle was improper, any information arising from that search must be suppressed.  Plaintiff argues that Trooper Vowell's detection of the odor of marijuana and the inconsistencies between the Vanhooks' stories provided Trooper Vowell with adequate cause to search the vehicle.  Indeed, Trooper Vowell testified that when he smelled the marijuana odor emanating from Ronald he decided that he would search the car. At the hearing, Ronald extensively challenged Trooper Vowell's ability to smell the marijuana.  Ronald pointed out that other law enforcement personnel who encountered the Defendants made no mention of a marijuana odor but commented as to the strong PCP odor. Ronald also made clear that there were no inconsistencies between Ronald's and Donald's

5

stories until Trooper Vowell improperly opened the car door.  Finally, Ronald challenged the signs on which Trooper Vowell relied to establish Ronald's nervousness.  Based on these facts, Ronald argues there was insufficient basis to search the car and, therefore, the search violated his Fourth Amendment rights.

The Court finds Trooper Vowell's testimony regarding the marijuana odor credible.  The fact that no other law enforcement personnel mentioned smelling marijuana does not mean that Trooper Vowell did not notice the smell.  Defendants' Exhibit 7 states the encounter between Defendants and the federal officers did not occur until two days after the stop.  Clearly, any marijuana odor could have dissipated in that time period.  The testimony at trial clearly established that PCP emanates a significantly stronger odor than marijuana.  Further, the Court finds the consistency of Trooper Vowell's testimony to enhance its credibility.  It is undisputed that Trooper Vowell smelled a strong odor of PCP upon opening Defendants' car.  Indeed, much of Ronald's argument at the hearing centered on the strength of that odor coming from his person and the consequent inability to smell marijuana.  Thus if, as Defendants argue, Trooper Vowell simply crafted a story to support his search, the more likely basis for the story would have been the PCP odor.  Certainly at the time he prepared the reports, Trooper Vowell was aware of the existence of PCP and the prevalence of its odor in Defendants' car.  Thus, Defendants' premise, that Trooper Vowell simply made something up to support his search of the car, is faulty.

At the hearing, Defendants conceded that if Trooper Vowell in fact smelled marijuana on Ronald he would have had adequate basis to search the car.[4]  Consequently, Defendants' motions must be overruled.

Even had the Court not found Trooper Vowell's testimony on the marijuana issue credible, the Court would still deny Defendants' motions.  If the stated grounds for searching the car are eliminated – there was no odor of marijuana, Ronald was not unduly nervous, and there were no inconsistencies in Ronald's and Donald's stories – the only issue left is Trooper Vowell's screening the car with his canine, Hilto.  There has been no evidence offered demonstrating that Trooper Vowell in any way based the decision to run Hilto on the car on impermissibly obtained facts.  Indeed, there is no evidence as to the basis for Trooper Vowell's decision regarding Hilto.  The Supreme Court has made clear that there need be no reason to have a drug dog screen a car during a traffic stop.  Illinois v. Caballes, 543 U.S. 405, 407 (2005):

> The question on which we granted certiorari, 541 U.S. 972, 124 S.Ct. 1875, 158 L.Ed.2d 466 (2004), is narrow:  "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop."  Pet. for Cert. i.  Thus, we proceed on the assumption that the officer conducting the dog sniff had no

---

[4] Tenth Circuit authority clearly supports this premise.  See United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991):

> This court has long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.  United States v. Merryman, 630 F.2d 780, 785 (10th Cir.1980); United States v. Sperow, 551 F.2d 808, 811 (10th Cir.1977), cert. denied, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); United States v. Bowman, 487 F.2d 1229, 1231 (10th Cir.1973).

> information about respondent except that he had been stopped for speeding; accordingly, we have omitted any reference to facts about respondent that might have triggered a modicum of suspicion.

Starting from this premise, the Supreme Court determined that the use of a drug dog in this situation does not raise Fourth Amendment concerns because it is not a search. "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Id. at 410. Thus, Defendants are left without a basis on which to protest the screening, as long as the screening did not unreasonably prolong the stop. As noted above, when the screen was run, dispatch had not yet returned the routine background computer information. Thus, there was no delay. Once Hilto hit on the car, Trooper Vowell had probable cause to search the vehicle. See United States v. Rosborough, 366 F.3d 1145, 1152 (10th Cir. 2004) (analyzing Tenth Circuit cases holding that canine alert creates probable cause to search vehicle).

The Court finds Trooper Vowell's testimony regarding the grounds for stopping Defendants' car and the subsequent search credible. Thus, Trooper Vowell's actions did not run afoul of the Fourth Amendment and Defendants' motions may be denied on that ground. Because Trooper Vowell may use his canine to screen the vehicle without raising Fourth Amendment concerns, Defendants have no basis to challenge the screen. Because the canine alerted to the vehicle, Trooper Vowell had probable cause to search the vehicle. Consequently, Defendant Donald Vanhook's Motion to Suppress Evidence Obtained (Dkt.

No. 32) and Defendant Ronald Vanhook's Motion to Suppress Illegally Seized Evidence (Dkt. No. 35) are DENIED.

IT IS SO ORDERED this 22nd day of May, 2006.


ROBIN J. CAUTHRON
United States District Judge